UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

Eastern District of Kentucky
FILED
FEB 21 2007
AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

CIVIL ACTION NO. 05-362-JBC

AKIRA MOTOI,     PLAINTIFF,

V.     **MEMORANDUM OPINION AND ORDER**

THE BRISTOL GROUP, INC.,     DEFENDANT.

\* \* \* \* \* \* \* \* \* \* \*

This matter is before the court on the plaintiff's motion to vacate (DE 64). The court, having reviewed the record and being otherwise sufficiently advised, will grant the motion in part and deny it in part. Though the court reaffirms the dismissal of the plaintiff's discrimination claim, the plaintiff may present proof at trial supporting his breach-of-contract claims related to mileage reimbursements and entitlement to incentive compensation/credit for leads, subject to the court's rulings on any motions at trial or the court's decisions regarding jury instructions.

### I. Factual Background

This action arises out of the separation of the plaintiff, Akira Motoi, from his employment with the defendant, The Bristol Group, Inc. ("Bristol"). The plaintiff is a citizen of Japan who has spent much of the past fifteen to twenty years working in the United States. The defendant is a design, engineering, and construction firm founded by J. Todd Ball in 1997. Ball is also Bristol's part-owner and President.

The plaintiff was employed by Bristol from approximately June of 2003 to August of 2004. After his employment at Bristol ended, the plaintiff filed this action in Fayette Circuit Court, and Bristol subsequently removed it to this court. The plaintiff alleged

claims against Bristol for breach of contract, breach of fiduciary duty, and discrimination in violation of 42 U.S.C. § 1981.

On September 20, 2006, Bristol filed a motion for summary judgment on all of the plaintiff's claims. On January 10, 2007, the court granted Bristol's motion in part and denied it in part. Specifically, the court held that Bristol was entitled to summary judgment on the plaintiff's breach-of-fiduciary-duty and discrimination claims, but that genuine issues of fact remained with regard to the plaintiff's breach-of-contract claim. The plaintiff now asks the court to vacate those parts of the January 10, 2007, Memorandum Opinion and Order in which: (1) the court found that the plaintiff and Bristol agreed that the legal expenses Bristol paid with regard to the plaintiff's work visa would be deducted from the plaintiff's mileage reimbursements; (2) the court granted the defendant's motion for summary judgment on the plaintiff's discrimination claim.

## II. Standard of Review

While not conceding that this motion is one to alter or amend a judgment, the plaintiff nonetheless claims that it meets the standards prescribed by Fed. R. Civ. P. 59(e). In order to succeed on a motion for reconsideration, the movant must establish a clear error of law; present newly discovered evidence; show that there has been an intervening change in controlling law; or show that absent relief, a manifest injustice will result. *Gencorp, Inc. v. American Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999); *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998). Such motions are not an opportunity for the losing party to offer additional arguments in support of its position. *Engler*, 146 F.3d at 374; *see also Kustom Signals,*

2

*Inc. v. Applied Concepts, Inc.*, 247 F. Supp. 2d 1233, 1235 (D. Kan. 2003) (stating that motions under Rules 59 or 60 of the Federal Rules of Civil Procedure do not provide "a second opportunity for the losing party to make its strongest case, to rehash arguments, or to dress up arguments that previously failed").

## III. Legal Analysis

### A. The Mileage Reimbursement Finding

In its Memorandum Opinion and Order, the court stated in two places that Motoi agreed with Bristol that the expenses Bristol paid to Greenebaum, Doll, & McDonald ("Greenebaum") regarding the plaintiff's work visa would be deducted from his mileage reimbursements. *See* DE 59, at 3, 15. The plaintiff claims that this was an improper factual finding. As the undersigned stated in the pre-trial conference held on January 26, 2007, the court did not intend to make any factual findings regarding whether Motoi agreed to such an arrangement. To the extent that it did so find, it now retracts this finding and recognizes that genuine issues of fact exist regarding whether the plaintiff agreed to have his mileage reimbursements deducted for amounts Bristol paid to Greenebaum regarding his visa application.[1]

### B. The Plaintiff's Discrimination Claim

In ruling on Bristol's motion for summary judgment, the court, applying the familiar burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981), held

---

[1] The plaintiff may present proof at trial supporting his breach-of-contract claim related to mileage reimbursements, subject of course to the court's rulings on any motions at trial or the court's decisions about jury instructions.

3

that the plaintiff had failed to present a prima face case of discrimination sufficient to survive its motion for summary judgment. Specifically, the court found genuine issues of fact as to the first two elements of the prima facie case and noted that the plaintiff had alleged numerous adverse employment actions. See DE 59, at 12-13. The court then held that, even if he succeeded on the first three prongs of the burden-shifting test, he had failed as a matter of law to demonstrate that a similarly situated employee had been treated better than he, or that he had been replaced by a non-protected employee following his termination. See id., at 13-17. The plaintiff alleges that the court made clear errors of law and misapplied the law in dismissing his claim for discrimination in violation of 42 U.S.C. § 1981.

As noted in the court's Memorandum Opinion and Order, a protected employee may prove a prima facie case of discrimination by showing that a comparable non-protected person was treated better than he was. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992). To do so, the plaintiff must show that the "comparables" are similarly situated *in all respects. Id.* (citing *Stotts v. Memphis Fire Dept.*, 858 F.2d 289 (6th Cir. 1988)) (emphasis in original); see also *Hollins v. Atlantic Co., Inc.*, 188 F.3d 652, 659 (6th Cir. 1999). This does not mean that a plaintiff must be similarly situated to his "comparables" in "every single aspect of their employment." See *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998). Rather, a plaintiff must prove that all of the relevant aspects of his employment situation were nearly identical to those of the non-minority's employment situation. *Id.* (quoting *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994)). In determining whether

4

employees are similarly situated, the court must vary its inquiry, depending upon the type of employer conduct at issue. *Freeman v. Madison Metro. Sch. Dist.*, 231 F.3d 374, 382 (7th Cir. 2000).

The plaintiff does not appear to dispute this applicable law but rather the court's application of it to this case. He claims that the court unduly focused on his job description instead of the relevant aspects of his employment, which he alleges include the similarity of his employment contract to those of other Bristol employees and the fact that he was one of a select group of office employees. Though "the plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered 'similarly-situated.'" *Ercegovich*, 154 F.3d at 352 (citation omitted), he cannot present a prima facie case merely by showing that he and a purportedly comparable employee share some similarities. Rather, the Sixth Circuit requires that, before two employees may be deemed similarly situated, they must be *nearly identical in all of the relevant aspects* of their employment. *See Ercegovich*, 154 F.3d at 352 (emphasis added).

With these principles in mind, the court will consider the plaintiff's specific disagreements with its previous rulings on the plaintiff's discrimination claim.

i. Termination

The plaintiff faults the court's determination that he failed to make a prima facie claim of discrimination with respect to his termination on the principal ground that the court improperly found that a former employee of Bristol to whom the plaintiff seeks to compare himself was given a severance package by Bristol because he negotiated it.

5

Ball testified as Bristol's corporate representative that this previous employee, who had been fired for alcoholism, received a severance package following his termination. Bristol Deposition, at 145. When the plaintiff's counsel asked Ball if Motoi had been paid a severance, Ball replied, "[Motoi] walked away from the job. He – he never returned to have any kind of a discussion about a transition." *Id.* Based on this testimony, the court stated that "Ball indicated in his deposition . . . that [the man fired as a result of alcoholism] negotiated [his severance] package." DE 59, at 14. This is a reasonable summation of Ball's testimony and a factor that distinguished this former employee's termination from Motoi's. Thus, they were not similarly situated.

Even if their terminations had proceeded similarly, the plaintiff has failed to present a prima facie case with regard to his termination from Bristol. The court noted in its Memorandum Opinion and Order that "[t]he plaintiff has identified no other employee who engaged in conduct similar to that for which the plaintiff was terminated, yet was not terminated." DE 59, at 14. The plaintiff still has not done so.[2]

In the disciplinary context, the individuals with whom the plaintiff seeks to compare his treatment must have dealt with the same supervisor, have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it. *Mitchell*, 964 F.2d at 583.[3] While Motoi and this

---

[2] Bristol points out, however, that another Bristol employee was fired because "he either lied or failed to follow through on . . . directives [he had been given]," Bristol deposition, at 156, conduct similar to that which it claims led to Motoi's termination.

[3] While the Sixth Circuit has subsequently criticized districts courts' reliance on *Mitchell* in determining whether employees are similarly situated in other contexts, it has

6

former employee had the same supervisor (Todd Ball), the plaintiff has presented no evidence that they were subject to the same standards. This former employee was allegedly a construction project manager, whereas Motoi's job was to bring in leads, proposals, and awarded contracts. Thus, at least one of Bristol's purported reasons for firing the plaintiff (his failure to generate leads, secure proposal opportunities, and make sales) would not apply to this former employee to the same degree that it did to Motoi.

However, even assuming that Motoi and the former employee were subject to the same standards, Motoi cannot demonstrate they engaged in the same conduct. The former employee was fired for alcoholism; Motoi was terminated for a variety of alleged reasons, including failure to produce business, insubordination, failure to respond to Bristol's emails, and failure to attend a meeting Ball asked that he attend. See Exhibit 1 to DE 27. The court cannot conclude that these two employees are "without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Mitchell, 964 F.2d at 583.[4]

Motoi argues that the fact that he cannot prove that his conduct is the same as that of this former employee is of no moment so long as it is of "comparable seriousness." Hollins, 188 F.3d at 659 (citation omitted). He then claims that, because alcoholism "is at least as serious as the purported reasons cited by Ball for Motoi's

---

noted that the factors espoused in Mitchell "are all relevant considerations in cases alleging differential disciplinary action." Ercegovich, 154 F.3d at 352.

[4]While the plaintiff claims that the "'conduct' [he] is alleged to have engaged in to warrant termination is a matter of factual dispute," DE 77, at 5 n.5, he has presented no evidence that he was terminated for engaging in any other activities that could be termed the "same conduct" as the former employee's alcoholism.

7

termination," DE 64, at 12, he has met his burden of showing that the former employee is similarly situated to him. This argument was explicitly rejected in *Mitchell*, in which the Sixth Circuit held that "Plaintiff's allegations regarding other employees not being fired for different, but what she subjectively believes to be more serious, misconduct simply does not satisfy [the similarly situated] element . . . ." *Id.* at 583. While *Mitchell* was distinguished in *Hollins*, the facts of *Hollins*, in which the plaintiff was reprimanded for having a particular hairstyle while other employees with the same hairstyle were not, warranted the distinction. This case does not, because the plaintiff has presented only his subjective belief that the alcoholic former employee's conduct was as egregious as his own. The court holds that this employee was not similarly situated to the plaintiff.

The plaintiff also claims that the court erred in ruling that he was not replaced by a non-protected employee when it determined that, "to the extent that [he] was replaced at all, his position was filled by [Tak Yamada,] another person within the protected class." DE 59, at 13. He contends that, following his termination, Bristol reshuffled its operations to account for the plaintiff's departure and that he was therefore replaced by a non-protected person. This argument fails as a matter of law because "[s]preading the former duties of a terminated employee among the remaining employees does not constitute replacement." *Majewski v. Auto. Data Processing, Inc.*, 274 F.3d 1106, 1115 (6th Cir. 2001) (quoting *Lilley v. BTM Corp.*, 958 F.2d 746, 752 (6th Cir. 1992)).[5]

---

[5]Moreover, the reshuffling of operations that the plaintiff highlights consists of a Bristol employee named Clay Campbell taking over for Josh Marrillia on Bristol's Tokico project and Marrillia's promotion from Engineer in Training to Director of Engineering and Sales. Even if *Majewski* and *Lilley* were not controlling on this issue, the court would be unconvinced that these events amounted to an effort by Bristol to replace Motoi.

8

While the plaintiff also notes that Brian Ledford, a non-protected employee, was hired in the Spring of 2005, Ledford was hired as an "Operations Manager," a person with "10 years of design/build experience and [who] would be responsible for all of the project management staff and oversee [Bristol's] construction operations." Exhibit 7 to DE 77. The disparity between Ledford and Motoi's job duties shows that Ledford did not replace Motoi. As the plaintiff has presented no other Bristol employee who could conceivably have been hired to replace him, the court concludes that he was either replaced by Tak Yamada or he was not replaced at all. In either case, he cannot prove that he was replaced by a non-protected employee after his departure.

In the current motion, the plaintiff asserts for the first time that he has stated a claim for discrimination because he was the only Bristol employee who was ever terminated for failure to obtain bonus compensation.[6] Putting aside the fact that the plaintiff's inability to "generate leads, secure proposal opportunities and . . . make sales" constituted only one of six purported reasons for the plaintiff's termination, see Exhibit 1 to DE 27, the plaintiff has not provided the court with any similarly situated employee who failed to obtain leads or bonuses, yet was not terminated. Thus, the plaintiff has failed to make a prima facie case of discrimination with respect to his termination.

ii. Mileage Reimbursement

In its Memorandum Opinion and Order, the court found that the plaintiff had failed to make out a prima facie case with respect to his mileage reimbursement

---

[6]The plaintiff discusses this component of his claim along with his claims that Bristol discriminated against him regarding the assignment of credit for leads. Because it is fundamentally an allegation that Bristol discriminated against him regarding his termination, the court will resolve it in this section of the opinion.

9

because he could not identify any other Bristol employee with whom he was similarly situated. DE 59, at 15. The court also stated that, "[e]ven if [the plaintiff] had [identified such an employee], Bristol's reasons for withholding the plaintiff's reimbursements were financially motivated, and the plaintiff has presented no evidence that this motivation was pretextual." *Id.* The plaintiff claims that the court erred in both of these findings.

The plaintiff first suggests that he is similarly situated to other Bristol employees who received mileage reimbursements because "he is equally entitled to benefit from the [mileage reimbursement] policy." DE 77, at 4. It is true that Bristol promised mileage reimbursements to the plaintiff, just as it did to other employees at Bristol. However, the plaintiff has identified no other Bristol employee on whose behalf Bristol ever incurred a debt, much less such an employee who was treated better than he was. While the plaintiff asserts that this comparison is too narrow, his argument that he and other employees who received mileage reimbursements are similarly situated solely on the basis of their right to receive reimbursements ignores the fact that Bristol paid money on his behalf. The court reiterates its earlier finding that the plaintiff is not similarly situated to other Bristol employees regarding his mileage reimbursements.

Even if the plaintiff could make out a prima facie case with respect to these reimbursements, he has not shown that Bristol's articulation of a legitimate, non-discriminatory justification (that is, the recoupment of amounts expended on the plaintiff's behalf) was pretextual. A discrimination plaintiff may show that an employer's purported justification was pretextual by demonstrating that: (1) the stated reason had no basis in fact; (2) the stated reason was not the actual reason; and (3) the stated reason was insufficient to explain the defendant's action. *Johnson v. Univ. of*

10

*Cincinnati*, 215 F.3d 561, 572 (6th Cir. 2000). Even assuming that Bristol agreed to pay for Motoi's visa expenses and that he did not agree to any reduction of his reimbursements, he has presented no evidence that this reduction of his reimbursements was related to anything but Bristol's desire to recoup the money it expended. The plaintiff claims that Bristol's action breached his employment contract and has presented some evidence that it did so. This does not elevate whatever breach-of-contract claim the plaintiff may have against Bristol into a discrimination claim. Even if Bristol's actions were wrongful to Motoi as a breach of contract, he has not shown that they were wrongful in a discriminatory sense. The court will not overturn its dismissal of the plaintiff's Section 1981 claim with regard to his mileage reimbursements.

### iii. Workplace and Worktools

In its Memorandum Opinion and Order, the court rejected the plaintiff's claim that Bristol discriminated against him with regard to his workspace and worktools because he failed to show "that an employee with job responsibilities like his own was supplied with better facilities at Bristol than he was." DE 59, at 16. The plaintiff contends that the court erred in finding that he failed to present a prima facie case with respect to his work area because it improperly focused on his job description instead of the relevant aspects of his employment. He claims that the court instead should have considered "whether or not it was discrimination to not provide him with the workspace and other equipment he needed to perform his employment contract." DE 64, at 14. He offers Josh Marrillia and Patricia Dimon as comparable employees.

With regard to workspace and worktool discrimination, an employee with whom

11

the plaintiff seeks to compare himself must have had the same or similar job duties and responsibilities. If two employees performing the same job functions are provided with different work equipment, and one of them is a member of a protected class and the other is not, an inference that discrimination is motivating the decision is supportable. If the employees perform different functions, then the employer may have legitimate reasons to treat them differently, and the inference is not supportable.

In this case, the plaintiff's job duties included planning sales and marketing requirements; managing and executing sales activities; implementing sales policies and procedures; looking for opportunities to solicit new business; contacting new and existing accounts; developing sales plans and forecasts; and monitoring competition. See Exhibit 7 to Motoi Deposition. Thus, Motoi was expected to develop and execute plans for encouraging other entities to work with Bristol through contact with those companies. On the other hand, Marrillia described his job in the following manner:

> How it would typically work is, a lead would present itself to Bristol Group and either through a company contacting Bristol Group or from perhaps Todd or Akira generating a prospective lead, but really once that project, I guess, came through the door, you could say, it was my responsibility to basically design and estimate and prepare the proposal to present to that client. And so you can kind of see where while I was doing the initial design on the project and estimating it and preparing the proposal, I was using all my engineering skills, but it was -- all that was necessary to quote get the sale.

Marillia Deposition, at 12-13. Motoi was expected to generate business by contacting prospective leads and encouraging them to work with Bristol; Marrillia, utilizing his engineering expertise, was responsible for preparing the design specifications that would ultimately determine whether Bristol was awarded a contract. While the plaintiff argues that he and Marrillia were similarly situated in that both of them performed sales

12

functions, Marrillia's testimony shows that the responsibilities they performed toward that end are far from the same. The plaintiff essentially argues that he and Marrillia were similarly situated because they had the same ultimate goal (that is, an awarded contract). This is an insufficient basis on which to conclude that Marrillia and Motoi were similarly situated.

The plaintiff has even less in common with Dimon than he does with Marrillia. Dimon testified that she performs "accounting functions" at Bristol, including "general ledger, accounts receivable, job costs, billing clients, setting up contracts [and] payroll." Dimon Deposition, at 7-8. These jobs are strikingly dissimilar to the duties performed by Motoi.

The court also rejects the plaintiff's argument that Motoi was similarly situated to Dimon and Marrillia because he had the same *need* for office space and a computer that they did. Even if the truth of this allegation is assumed, Bristol, like any other employer, is entitled to provide different facilities to employees who perform different job functions. The plaintiff cannot show that he is similarly situated to Dimon and Marrillia simply by asserting that his different job required the same equipment and office space.[7] If he were permitted to do so, the Sixth Circuit's instruction that a

---

[7] The plaintiff's reliance on *Cole v. Delaware Tech. and Cmty. Coll.*, 459 F. Supp. 2d 296 (D. Del. 2006), is also misplaced. In that case, the plaintiffs, who were African-American student enrichment coordinators involved with federally funded TRIO programs, were moved from individual offices into a combined office by the defendant. *Id.* at 300-01. The court in *Cole* focused primarily on whether the employees had, in fact, suffered an adverse employment action as a result of the move and whether other non-protected employees actually had better offices. *Id.* at 304-05. The court provided virtually no discussion of whether these non-protected employees were similarly situated.

This court also notes that, in *Cole,* the employees who moved into the plaintiffs'

13

discrimination plaintiff must be similarly situated to a comparable employee in "all relevant aspects" would be rendered meaningless.

Moreover, the plaintiff's claim that he was not provided with the tools he needed to perform his job more properly applies to the "adverse employment action" prong of the prima facie case than the "similarly situated" prong. A plaintiff cannot make out a prima facie case of discrimination simply by showing that he suffered an adverse action and other employees did not. The court holds that Dimon and Marrillia were not similarly situated to the plaintiff, and his prima facie claim for workplace and worktool discrimination fails on that ground as well.

### iv. Credit for Leads

The plaintiff also seeks the reversal of the court's earlier finding that Bristol did not discriminate against him with regard to the payment of incentive compensation.[8] The court held in its earlier order that, although the plaintiff had presented a great deal of evidence regarding his entitlement to incentives, he had failed to show that he was

---

former offices were also TRIO staff members, one of whom was, like the plaintiffs, a student enrichment coordinator. Id. at 301.

[8]Technically, the plaintiff asserts that the court failed to rule on his claim that Bristol discriminated against him in the assignment of credit for leads. In its earlier order, the court discussed the plaintiff's "entitlement to incentives" and the fact that he did not "bring in the same amount of business" as other Bristol employees. DE 59, at 14-15. The court believed this terminology to be appropriate since the plaintiff's entitlement to incentives flows, at least in part, from the assigning of credit for leads. However, the court recognizes that a distinction may be made between the "assignment of credit for leads" and "entitlement to incentives" and will therefore refer solely to the former in discussing the plaintiff's discrimination claims in this section.

14

denied those incentives due to his membership in a protected class. DE 59, at 15.[9] The plaintiff asserts that he was similarly situated to Marrillia because they both worked to obtain leads for Bristol and could obtain bonuses based on their performance. DE 64, at 15. He also claims that, unlike Marrillia, he was not given credit for leads when he performed the same work that Marrillia did. Id.

As the court found in the previous section, the plaintiff's and Marrillia's job responsibilities differed significantly. While the plaintiff alleges that both he and Marrillia worked to obtain leads for Bristol, Marrillia testified that his job "typically" began after "a lead would present itself to Bristol Group . . . either through a company contacting Bristol Group or from perhaps Todd or Akira generating a prospective lead . . . ." Marrillia Deposition, at 12. Thus, while Marrillia could generate leads, he was not engaged in pursuing leads to the extent that Motoi was. Further, Motoi's right to incentive compensation explicitly depended on the leads he generated. See Exhibit 7 to Motoi Deposition. Marrillia's bonus compensation was tied to "how [Ball] felt [Marrillia] performed in [his] job." Marrillia Deposition, at 18-19. Although both Motoi and Marrillia could earn incentive compensation at Bristol, their methods of earning that compensation (and, more particularly, the value of receiving credit for leads in determining it) differed significantly.

Finally, the plaintiff has not shown that the work performed by Marrillia (or any

---

[9]The court reaffirms its earlier ruling that genuine issues of fact exist as to the plaintiff's breach-of-contract claim regarding credit for leads and entitlement to incentives. The plaintiff may present proof at trial supporting this breach-of-contract claim, subject to the court's rulings on any motions at trial or the court's decisions about jury instructions.

15

other employee) in acquiring leads is substantially similar to the work he did in acquiring leads. The plaintiff simply argues that, while leads that Marrillia obtained doing internet research were credited to Marrillia, the plaintiff was not awarded credit for leads that he pursued. Because Marillia and the plaintiff differed in regard to: (1) the relevance of leads to their jobs and incentive structure; and (2) the actions they took in collecting leads, the court cannot conclude that Marrillia was similarly situated to the plaintiff with regard to this issue.

The court has already held that the plaintiff has created a genuine issue of fact regarding the propriety of Bristol's assignment of credits to him, as to his breach-of-contract claim. As noted in the previous section, however, a plaintiff does not state a prima facie claim for discrimination by showing that another employee received a benefit to which he is also arguably entitled. If a plaintiff could do so, nearly every breach of contract claim prosecuted by a member of a protected class would be converted into a discrimination claim. The court finds that it properly dismissed the plaintiff's discrimination claim regarding the assignment of credit for leads.

### IV. Conclusion

Accordingly,

**IT IS ORDERED** that the plaintiff's motion to vacate (DE 64) is **GRANTED IN PART** and **DENIED IN PART**. The motion is **GRANTED** to the extent that the court's finding that the plaintiff agreed to have his mileage reimbursements deducted for amounts Bristol paid to Greenebaum regarding his visa application is **VACATED**. The remainder of the plaintiff's motion is **DENIED**.

16

Signed on February 21, 2007

*Jennifer B. Coffman*
JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY